# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| RUDY LLOREDO and CHRISTOPHER WRIGHT, individually and on behalf of all others similarly situated, | Case No.: 04-CV-20991 |
| | JUDGE:  William H. Hoeveler |
| Plaintiffs, | **COLLECTIVE CLASS ACTION**<br>**[29 U.S.C. § 216(b)]** |
| vs. | **JOINT MOTION FOR AN ORDER:** |
| RADIOSHACK CORPORATION, | **1. GRANTING PRELIMINARY APPROVAL OF SETTLEMENT** |
| Defendants. | **2. GRANTING APPROVAL OF NOTICE** |
| | **3. SCHEDULING THE FINAL FAIRNESS HEARING** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| | **(filed concurrently with the Affidavit of Robert W. Thompson and the exhibits thereto, including the Proposed Settlement Agreement, the Proposed Notice of Settlement, and the Proposed Order)** |

**COME NOW** Plaintiffs, Rudy Lloredo and Christopher Wright, on behalf of themselves, individually, and on behalf of the proposed Settlement Class of current and former RadioShack "Y" store managers in the matter entitled *Lloredo, et al. v. RadioShack Corp.,* and Defendant RadioShack Corporation (hereinafter "RadioShack"), and make this Joint Motion for an Order from this Court:

1.  Granting preliminary approval of the Settlement;

2.  Approving the Notice Plan; and

- 1 -

3.  Scheduling the Final Fairness Hearing to take place no less than 100 days

following provision of the applicable materials to the Claims Administrator.

A motion in a substantially identical form is being filed with all courts in which the overtime wage class actions included in the Settlement Agreement are certified, captioned accordingly for each action, so that each Court will have the same facts upon which to determine that the proposed Settlement is fair, reasonable, adequate and in the best interest of the members of the Settlement Class.

This Motion is based on this Joint Motion; the Memorandum of Points and Authorities in support thereof; the Affidavit of Robert W. Thompson, Esquire, together with the attached Settlement Agreement and proposed Notices; the papers and records on file; and such other further oral and documentary evidence as may be presented at or before the hearing of this Motion.

DATED:  ____03/06/07_____       **HERMAN & MERMELSTEIN, P.A.**


                                                                   By:  ____/s/ Jeffrey M. Herman_____
                                                                   Attorneys for Plaintiffs

DATED:  ____03/06/07_____       **MCKENNA LONG & ALDRIDGE LLP**


                                                                   By:  ____/s/ Robert S. Brewer, Jr._____
                                                                   Attorneys for Defendant

- 2 -

JOINT MOTION FOR AN ORDER GRANTING
PRELIMINARY APPROVAL OF SETTLEMENT

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ....................................................................................................... 3

TABLE OF AUTHORITIES ............................................................................................... 5

I.    INTRODUCTION ...................................................................................................... 6

II.   STATEMENT OF FACTS ........................................................................................ 7

   A.    THE PARTIES ..................................................................................................... 7

     1.    The Representative Plaintiffs ...................................................................... 7

     2.    The Settlement Class ................................................................................... 8

     3.    The Settlement Notice Class ....................................................................... 8

     4.    The Supplemental Notice Class ................................................................... 9

     5.    The Supplemental Settlement Class ............................................................ 9

     6.    The Defendant ........................................................................................... 10

   B.    THE LITIGATION ............................................................................................ 10

III.  THE SETTLEMENT SATISFIES CRITERIA FOR PRELIMINARY APPROVAL ..... 12

   A.    The Settlement Reasonably Reflects the Strengths and Weaknesses of the Parties' Cases and Apportions the Distribution of Benefits to the Risks Accordingly .............................. 15

   B.    The Cases are Complex and Uncertain, and This Settlement is Proper in Light of the Uncertainties .................................................................................................................. 16

   C.    The Litigation has Drawn on for More Than Four Years at Great Expense to All Parties ............................................................................................................................. 17

   D.    The Parties are Aware of No Opposition to the Settlement ............................... 18

   E.    Competent Counsel Believe that the Settlement is Fair and Reasonable in Light of the Well-Developed Facts and Legal Issues ........................................................................ 18

   F.    The Settlement Amount is Fair, Reasonable and Adequate in Light of the Risks to the Parties if Litigation Continues ...................................................................................... 18

JOINT MOTION FOR AN ORDER GRANTING
PRELIMINARY APPROVAL OF SETTLEMENT

1   IV.   THE NOTICE PROVIDES PROPER INFORMATION TO MEMBERS OF THE
2       SETTLEMENT CLASS......................................................................................... 19
3   V.   THE DATE FOR THE FINAL FAIRNESS HEARING SHOULD BE SET FOR A DATE
4       NO LESS THAN 100 DAYS FOLLOWING PROVISION OF THE APPLICABLE
5       MATERIALS TO THE CLAIMS ADMINISTRATOR...................................... 20
6   VI.     CONCLUSION.............................................................................................. 21

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT MOTION FOR AN ORDER GRANTING
PRELIMINARY APPROVAL OF SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Cases**

*Bennett v. Behring Corp.,* 737 F.2d 982 (11th Cir 1984) ............................................ 13, 14

*Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975).................................................................. 13

*Henley v. FMC Corp.,* 207 F. Supp.2d 489 (S.D. W.Va. 2002)...................................12

*In re AT&T Corp. Secs. Litig.,* 455 F.3d 160 (3d Cir. 2006) ........................................ 13

*In re Diet Drugs,* 385 F.3d 386 (3d Cir. 2004) ............................................................... 13

*In re Diet Drugs Prods. Liability Litig.,* No. 99-20593, 1999 WL 33644489

   (E.D. Pa. Dec. 3, 1999).........................................................................................12

*In re Inter-Op Prosthesis Liability Litig.,* 204 F.R.D. 330 (N.D. Ohio 2001)..............12

*In re Shell Oil Refinery,* 155 F.R.D. 552 (E.D. La. 1993)...................................12

*Isby v. Bayh,* 75 F.3d 1191 (7th Cir. 1996) .................................................................... 13

*Jarrard v. Southeastern Shipbuilding Corp.,* 163 F.2d 960 (5th Cir. 1947)..................... 12

*Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir. 1982)..................... 12

*Mirfasihi v. Fleet Mortg. Corp.,* 450 F.3d 745 (7th Cir. 2006) .................................. 13, 14

*Otto v. Pocono Health Sys.,* No. 4:06-CV-1186, 2006 WL 3059924

   (M.D. Pa. Oct. 27, 2006)......................................................................................16

*Reynolds v. Benefit Nat'l Bank,* 288 F.3d 277 (7th Cir. 2002) ......................................... 13

*Schulte, Inc. v. Gangi,* 328 U.S. 108 (1946) ................................................................... 12

**Statutes**

29 U.S.C. § 201 *et seq.* ...................................................................................................... 7

**Treatises**

Manual for Complex Litigation (3d Ed. 2003) § 30.41 ................................................. 14

Newberg on Class Actions (4th Ed. 2002) § 11:25.......................................................... 14

- 5 -

JOINT MOTION FOR AN ORDER GRANTING
PRELIMINARY APPROVAL OF SETTLEMENT

1                        **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.**    <u>**INTRODUCTION**</u>

3              With this Motion, the parties seek preliminary approval of a global settlement intended to

4  finally resolve the Plaintiffs' claims for unpaid overtime wages and related matters against

5  RadioShack, as set forth herein and in the attachments to the supporting Affidavit of Robert W.

6  Thompson.  All references to the Settlement Agreement, made herein, are illustrative for the

7  purposes of this Motion only, and the comments and references contained herein are not intended

8  to replace, augment, minimize, delete, clarify or explain any words, terms or numbers contained

9  within the Settlement Agreement itself.  The Settlement Agreement (attached as Exhibit 1 to the

10  Affidavit of Robert W. Thompson, concurrently filed with this Motion) will resolve all claims

11  for unpaid overtime wages and related matters in the following actions:

12        • *Alphonse Perez and Douglas Phillips, et al. v. RadioShack Corporation*, No. 02-cv-7884

13          (N.D. Ill.) (hereinafter, the "Perez Litigation" and referencing the "Perez Class") (*see*

14          *Perez* Complaint, attached as Exhibit 2 to the Affidavit of Robert W. Thompson);

15        • *Mark Goldman, et al. v. RadioShack Corporation*, No. 03-cv-0032 (E.D. Pa.)

16          (hereinafter, the "Goldman Litigation" and referencing the "Goldman Class") (*see*

17          *Goldman* Complaint, attached as Exhibit 3 to the Affidavit of Robert W. Thompson);

18        • *Rudy Lloredo and Christopher Wright, et al. v. RadioShack Corporation*, No. 04-cv-

19          20991 (S.D. Fla.) (hereinafter, the "Lloredo Litigation" and referencing the "Lloredo

20          Class") (*see Lloredo* Complaint, attached as Exhibit 4 to the Affidavit of Robert W.

21          Thompson);

22        • *Brendan Birns and Christopher Pelky, et al. v. RadioShack Corporation*, No. 06-cv-9099

23          (S.D. N.Y.) (hereinafter, the "Birns Litigation" and referencing the "Birns Plaintiffs")

24          (*see Birns* Complaint, attached as Exhibit 5 to the Affidavit of Mr. Thompson);  and

25        • *David Tibbetts v. RadioShack Corporation*, No. 03-2249 (N.D. Ill.) (hereinafter, the

26          "Tibbetts Litigation") (*see Tibbetts* Complaint, attached as Exhibit 6 to the Affidavit of

27          Robert W. Thompson).

28                                - 6 -

1   Hereinafter, the above actions are collectively referred to as the "Litigation."

2        The proposed Settlement is intended to finally resolve multiple district court actions and

3   related appellate matters arising, primarily, from claims for purported uncompensated overtime

4   wages.  The Settlement Agreement is the product of lengthy investigation, extensive discovery,

5   collective and/or class action certifications, an Order of partial summary adjudication issued by

6   the *Perez* Court finding that certain "Y" store managers were non-exempt from the requirement

7   to be paid overtime wages under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*

8   ("FLSA"), one jury trial, appeals taken from judgments entered in two of the above-listed actions

9   (*Goldman* and *Tibbetts*), and, ultimately, extensive mediation facilitated by the Honorable Nan

10  R. Nolan, Magistrate Judge, Northern District of Illinois.

11  **II.    STATEMENT OF FACTS**

12          **A.    The Parties**

13                  **1.    The Representative Plaintiffs**

14          Alphonse Perez and Douglas Phillips were residents of Illinois at the time of the filing of

15  their Complaints.  Mark Goldman was a resident of Pennsylvania at the time of the filing of his

16  Complaint.  Rudy Lloredo and Christopher Wright were residents of Florida at the time of the

17  filing of their Complaint.  Brendon Birns and Christopher Pelky were residents of New York at

18  the time of the filing of their Complaint.  All were employed by RadioShack as "Y" store

19  managers within the class periods alleged by their respective complaints.

20          Each Representative Plaintiff will receive notice of both this Settlement and the

21  anticipated amount of their individual settlement payments.  If this Settlement is approved and

22  becomes final, they will receive the Settlement Class payments described in the following

23  section, as well as incentive payments reflecting the additional efforts that they put forth and the

24  sacrifices that they made for the benefit of the class.  The incentive payments will be $20,000

25  each to Class Representatives Perez, Phillips and Goldman; $5,000 each to Class Representatives

26  Lloredo and Wright, and $1,000 each to Class Representatives Birns and Pelky.

27

28                                    - 7 -

1

## 2. **The Settlement Class**

2      The Class Representatives act herein on behalf of a combined Settlement Class of

3  Defendant's former and current employees who were similarly situated in that they were all

4  managers of RadioShack's "Y" category of retail stores.  With few exceptions, described in the

5  following section, the Settlement Class is comprised of the *Perez* opt-in plaintiffs, the *Lloredo*

6  opt-in plaintiffs, the *Goldman* plaintiffs who either opted in to the FLSA class or did not opt-out

7  of the state law class, the *Birns* plaintiffs, and Mr. Tibbetts, individually.  All members of the

8  Settlement Class will receive notice of both this Settlement and the anticipated amount of their

9  individual settlement payments.

10      The settlement divides the class members into two subgroups.  First is the "Supervision

11  Subgroup" – sometimes referred to herein as the "80/80 Subgroup" – consisting of those

12  Settlement Class members who did not supervise at least 80 employee hours at least 80% of the

13  time.  If this Settlement is approved and becomes final, these subgroup members will receive

14  back wages for 100% of all stipulated overtime worked going back two years prior to the date of

15  the filing of the notices of consent in the *Perez, Lloredo and Birns* Litigations, and three years

16  prior to the date of the filing of the Complaint in the *Goldman* Litigation.

17      The second subgroup, the "Primary Duty Subgroup," consists of those Settlement Class

18  members who did not meet the requirements to be included in the 80/80 Subgroup, and who may

19  qualify as non-exempt only upon a showing that as "Y" store managers, their primary duty was

20  not management.  If the Settlement is approved and becomes final, these subgroup members will

21  receive a fixed payment of $100 each.

22      The settlement funds are to be allocated differently to these two subgroups because of the

23  strengths and weaknesses of the claims of each subgroup, as described in III(A) below.

24

## 3. **The Settlement Notice Class**

25      There are persons who opted in to the *Perez, Lloredo* and/or *Birns* actions, but who are

26  not members of the Settlement Class either because they opted in after the deadline, or were not

27  employed as a "Y" Store Manager in a RadioShack retail store during the applicable period, or

28                                        - 8 -

1  did not work any overtime hours as a "Y" Store Manager during the applicable period, or had

2  their claims previously adjudicated in another court.  There are also persons who received the

3  FLSA Notice in *Goldman* and did not opt out of the state law class before the court-ordered

4  deadline, but who are not members of the Settlement Class because they did not work any

5  overtime hours as a "Y" Store Manager during the applicable period.  The Settlement Notice

6  Class is comprised of all such persons.

7      All Settlement Notice Class members will receive notice of this Settlement, their

8  ineligibility to participate in it, and the reason for their ineligibility.

9          **4.**      **The Supplemental Notice Class**

10      There are ten persons who RadioShack inadvertently did not include on the prior lists of

11  potential class members in *Goldman* and who were not provided with a copy of any of the

12  notices or an opportunity to opt out of the case.  There are also an additional 321 persons who

13  RadioShack inadvertently did not include on the prior lists of potential class members in *Lloredo*

14  and who were not provided with a copy of any of the notices or an opportunity to opt in to the

15  case.  The Supplemental Notice Class is comprised of all such persons.

16      All members of the Supplemental Notice Class will be provided with notice of the action,

17  this Settlement, and the amount of money they will receive under the settlement if they choose to

18  remain in it.  The ten persons from *Goldman* will be provided with an opportunity to opt out of

19  the action and its settlement, and the remaining persons will be provided with an opportunity to

20  opt in to *Perez* and this settlement.[1]

21          **5.**      **The Supplemental Settlement Class**

22      All persons from the *Goldman* Supplemental Notice Class who do not opt out by the

23  deadline, and all persons from the *Lloredo/Perez* Supplemental Notice Class who opt in by the

24

25

26  [1] The parties have decided to re-open the opt-in period in *Perez* to allow these additional individuals to join *Perez*,

27  rather than *Lloredo*, given that class member treatment will be the same whether the individuals are included in the *Perez* class or the *Lloredo* class, that this global settlement was initially negotiated out of the Northern District of Illinois, and that Judge Pallmeyer is very familiar with all aspects of these cases.

28

JOINT MOTION FOR AN ORDER GRANTING
PRELIMINARY APPROVAL OF SETTLEMENT

1   deadline, will be members of the Supplemental Settlement Class, and will recover using the same

2   method described above for members of the Settlement Class.

3   **6.   The Defendant**

4   At all times herein relevant, Defendant RadioShack is and was a Delaware corporation

5   with its principal place of business in Texas.

6   **B.   The Litigation**

7   The *Perez* Litigation commenced in the United States District Court for the Northern

8   District of Illinois on October 31, 2002.  On June 13, 2003, *Perez* was certified to proceed as a

9   collective class action.  Approximately 3284 persons opted into *Perez*, and twelve subsequently

10  opted back out, leaving a class of 3272.  On September 9, 2005, the Court ruled that the 80/80

11  Subgroup (as further defined by the recommendations of the magistrate judge that were adopted

12  by the Court by order dated May 5, 2006) was not exempt from the requirement to be paid

13  overtime wages under the FLSA.  Of the 3272 *Perez* class members, 550 qualify as members of

14  the 80/80 Subgroup.  There remain approximately 2722 *Perez* opt-ins who do not qualify for the

15  80/80 Subgroup, and 2536 of those are members of the Primary Duty Subgroup.  Only 186 do

16  not qualify for a payment.

17  The *Goldman* Litigation commenced in the Court of Common Pleas of Philadelphia

18  County on December 11, 2002, and was subsequently removed to the United States District

19  Court for the Eastern District of Pennsylvania.  On April 16, 2003, the Court certified an opt-in

20  FLSA collective class.  On May 9, 2005, the Court certified an opt-out class for purposes of

21  those plaintiffs' alleged state law wage and hour claims.  The Court did not establish a subgroup

22  on the basis of each class member's level of subordinate supervision, finding instead that such a

23  determination should be made on a classwide basis.  The case went to trial, and on July 6, 2005,

24  the jury returned a verdict for Defendant RadioShack.  On February 17, 2006, Plaintiff filed a

25  Notice of Appeal, and on May 8, 2006, Plaintiff filed a supporting brief.  The appeal was

26  pending before the United States Court of Appeals for the Third Circuit, Docket No. 06-1657,

27  but on October 24, 2006, the Third Circuit granted the parties' motion to partially remand the

28  - 10 -

1  case to the District Court to consider this Settlement. For purposes of the Settlement, and even

2  though the *Goldman* court did not so rule, of the 528 members in the *Goldman* class who worked

3  overtime hours during the applicable period, 157 qualify as members of the 80/80 Subgroup.

4  The remaining 371 do not qualify as members of the 80/80 Subgroup, but do qualify as members

5  of the Primary Duty Subgroup. Only five class members who did not work any overtime as a

6  "Y" store manager during the applicable period will not receive a payment.

7      The *Lloredo* Litigation commenced in the United States District Court for the Southern

8  District of Florida on April 28, 2004. On August 23, 2004, the Court certified an opt-in FLSA

9  collective class. Of the 899 persons who comprise the *Lloredo* class as a whole, 163 qualify to

10 be members of the 80/80 Subgroup, and 736 persons do not so qualify. Of those 736, 682

11 qualify as members of the Primary Duty Subgroup. Only 54 will not receive a payment.

12      The *Birns* Litigation commenced in the United States District Court for the Southern

13 District of New York on February 6, 2006. In addition to the two Class Representatives, ten

14 additional persons submitted a valid consent to join that action prior to the August 25, 2006

15 deadline included in the Settlement Agreement and have signed the Settlement Agreement.

16 Because a *Birns* class has not been certified to proceed as a collective action, that court's

17 approval of this Settlement Agreement is not required, and the *Birns* plaintiffs who have signed

18 the Settlement Agreement, as parties to this Settlement, have agreed to dismiss their claims. For

19 the purpose of this Settlement, the parties to that action have stipulated to settle the claims of the

20 twelve persons who have submitted a valid consent to join as of August 25, 2006 and who have

21 signed the Settlement Agreement. Two qualify for the 80/80 Subgroup. The remaining ten are

22 members of the Primary Duty Subgroup. An additional seven persons submitted consents to

23 join, but their claims of five are not valid because they were not "Y" Store Managers during the

24 applicable period, the claim of one is not valid because his claim was adjudicated in another

25 action, and the claims alleged by one are not included because he declined to participate in the

26 Settlement Agreement.

27

28

- 11 -

JOINT MOTION FOR AN ORDER GRANTING
PRELIMINARY APPROVAL OF SETTLEMENT

1    The *Tibbetts* Litigation, an individual wrongful termination and retaliatory discharge

2    action, commenced in the United States District Court for the Northern District of Illinois on

3    March 31, 2003.  On September 20, 2004, summary judgment was granted in favor of Defendant

4    RadioShack, and Mr. Tibbetts has filed his appeal to the United States Court of Appeals for the

5    Seventh Circuit, Docket No. 04-3781, but in accordance with the Settlement Agreement, he will

6    dismiss his claim.

7    **III.    THE SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY**
     **APPROVAL.**

8

9    "When employees bring a private action for back wages under the FLSA, and present to

10   the district court a proposed settlement, the district court may enter a stipulated judgment after

11   scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States,* 679 F.2d

12   1350, 1353 (11th Cir. 1982) (*citing Schulte, Inc. v. Gangi,* 328 U.S. 108 (1946)); *Jarrard v.*

13   *Southeastern Shipbuilding Corporation,* 163 F.2d 960, 961 (5th Cir. 1947).

14   At the *preliminary* approval stage, a court need not reach a final conclusion as to the

15   fairness of the settlement, but rather must only make a preliminary evaluation into whether the

16   proposed settlement is within the range of possible approval meriting notification to the class.

17   *Henley v. FMC Corp.,* 207 F. Supp.2d 489, 493 (S.D. W.Va. 2002); *In re: Diet Drugs Prods.*

18   *Liability Litig.,* No. 99-20593, 1999 WL 33644489, at *2 (E.D. Pa. Dec. 3, 1999).  "[T]he

19   Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the

20   settlement in light of the likely outcome and the cost of continued litigation." *In re Inter-Op*

21   *Prosthesis Liability Litig.,* 204 F.R.D. 330, 350 (N.D. Ohio 2001).  Thus, courts should grant

22   preliminary approval if their evaluation of the settlement does not disclose any obvious

23   deficiencies and it appears that the settlement was the result of "serious, informed, non-collusive

24   negotiations." *In re Shell Oil Refinery,* 155 F.R.D. 552, 555 (E.D. La. 1993).

25   The proposed Settlement Agreement provides for a global settlement of $8.8 million for

26   the claims of the Settlement Class, with more than $4 million being paid directly to the

27   Settlement Class and the Class Representatives, as described in II(A) above   The proposed

28   - 12 -

JOINT MOTION FOR AN ORDER GRANTING<br>PRELIMINARY APPROVAL OF SETTLEMENT

1    Settlement Agreement also provides for an as-yet undetermined sum for the claims of the

2    Supplemental Settlement Class, with the entire amount of that fund being paid directly to the

3    Supplemental Settlement Class.

4         Concurrent with the filing of their motions for final approval of the proposed Settlement,

5    Class Counsel will submit a motion with supporting materials requesting that approximately $1.3

6    million of the global settlement amount be paid to Class Counsel for reimbursement of costs,

7    which costs include payments of $2,500 each to eighteen witnesses who testified at deposition

8    and acted as consultants throughout the case, and payments of $5,000 each to four witnesses who

9    testified at both deposition and trial and also acted as consultants.  The parties sought guidance

10   from the *Perez* Court before agreeing to the witness/consultant payments, and Judge Pallmeyer

11   indicated that they would be appropriate.  The motion will also request that the remainder of the

12   global settlement fund be paid to Class Counsel as fees.  This would total approximately $3.5

13   million, representing only 38.5% of Class Counsel's lodestar as of December 2006, and that

14   percentage has and will continue to decrease as Class Counsel continues to work on the

15   settlement.

16        The Settlement is fair, adequate and reasonable; it is not the product of collusion; and the

17   facts set forth herein would satisfy a court's duty to guard the rights of absent class members.

18   *See In re AT&T Corp. Secs. Litig.,* 455 F.3d 160, 175 (3d Cir. 2006); *In re Diet Drugs,* 385 F.3d

19   386, 392 (3d Cir. 2004); *Mirfasihi v. Fleet Mortg. Corp.,* 450 F.3d 745, 748 (7th Cir. 2006);

20   *Reynolds v. Benefit Nat'l Bank,* 288 F.3d 277, 279 (7th Cir. 2002); *Bennett v. Behring Corp.,* 737

21   F.2d 982, 986 (11th Cir 1984).

22        The factors to be considered in the determination of fairness and adequacy of class action

23   settlements are similar in the Third, Seventh, and Eleventh Circuits — the jurisdictions affected

24   by the Settlement —and the proposed Settlement sits favorably with regard to all factors.

25        In the Third Circuit, the factors to be considered for adequacy of settlement are the

26   following: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of

27   the class to the settlement; (3) the stage of the proceedings and the amount of discovery

28                                    - 13 -

1   completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the

2   risks of maintaining a class action through the trial; (7) the ability of defendants to withstand a

3   greater judgment; (8) the range of reasonableness of the settlement fund in light of the best

4   recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in

5   light of all the attendant risks of litigation." *In re AT&T Corp.,* 455 F.3d at 164-65 (citing *Girsh*

6   *v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975)).

7       In the Seventh Circuit, the factors to be considered for fairness and adequacy of

8   settlement are the following: "the strength of plaintiffs' case compared to the amount of

9   defendants' settlement offer, an assessment of the likely complexity, length and expense of the

10  litigation, an evaluation of the amount of opposition to settlement among affected parties, the

11  opinion of competent counsel, and the stage of the proceedings and the amount of discovery

12  completed at the time of settlement." *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996). "As a

13  general principle, a district court should evaluate, among other things, the probability of plaintiff

14  prevailing on its various claims, the expected costs of future litigation, and hints of collusion."

15  *Mirfasihi,* 450 F.3d at 748.

16      In the Eleventh Circuit, the following guidelines are to be considered for adequacy of

17  settlement: "that there was no fraud or collusion in arriving at the settlement and that the

18  settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial;

19  (2) the range of possible recovery; (3) the point on or below the range of possible recovery at

20  which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of

21  litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of

22  proceedings at which the settlement was achieved." *Bennett,* 737 F.2d at 986.

23      According to Newberg on Class Actions (4th Ed. 2002) § 11:25, regarding preliminary

24  court approval of class settlements:

25          If the preliminary evaluation of the proposed settlement does not disclose grounds
            to doubt its fairness or other obvious deficiencies, such as unduly preferential
26          treatment of class representatives or of segments of the class, or excessive
            compensation for attorneys, and appears to fall within the range of possible
27          approval, the court should direct that notice under Rule 23(e) be given to the class

28                                              - 14 -

members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

(*citing* Manual for Complex Litigation (3d Ed. 2003) § 30.41).

In other words, the purpose of the preliminary evaluation is to determine whether the proposed settlement is within the range of possible judicial approval and whether notice to the class of the terms and conditions of the settlement and the scheduling of a formal fairness hearing is worthwhile.  Newberg, at §11:25.

**A.**   **The Settlement Reasonably Reflects the Strengths and Weaknesses of the Parties' Cases and Apportions the Distribution of Benefits to the Risks Accordingly.**

In this case, the greatest risk is in finding liability, and not in establishing the damages. Pursuant to the Settlement Agreement, two subgroups will settle their claims according to the risk of establishing liability for each subgroup: the 80/80 Subgroup and the Primary Duty Subgroup.

The strength of the 80/80 Subgroup's claims arises from the *Perez* summary adjudication that such persons are non-exempt from the FLSA's overtime provisions as a matter of law, and the possibility that this Court might adopt that standard in ruling on the plaintiffs' pending motion for partial summary judgment and that the Third Circuit might also adopt that standard in ruling on the *Goldman* appeal.

The weakness of the position of the members of the Primary Duty Subgroup lies with the need to establish several additional factors to be entitled to overtime wages, including the need to establish that class members' managerial duties were relatively less important than their other duties, that class members did not frequently exercise discretion and were not relatively free from supervision, and that class members' wages were not significantly greater than the wages of their employees.  The difficulty in meeting this burden of proof was demonstrated by the loss at trial of the *Goldman* case and mock trial experiences.  It was further demonstrated more recently, when on September 15, 2006, a Wisconsin state court granted summary judgment for RadioShack, finding that a certified class of current and former Wisconsin "Y" store managers

- 15 -

1   held a primary duty of management and were properly classified as exempt under the state law

2   equivalent of the former FLSA "long test" for the executive exemption.

3          Accordingly, the proposed Settlement provides a greater benefit to those class members

4   who would benefit from the 80/80 ruling in *Perez*, where Defendant RadioShack has a greater

5   risk of loss.  Similarly, the proposed Settlement Agreement reflects the risk of loss to the

6   remaining plaintiffs, because it provides lesser benefit for those class members who lost in

7   *Goldman* and for the class members in *Perez, Lloredo and Birns* who may similarly lose if they

8   are required to establish the additional factors to support that management was not their primary

9   duty.  This is a true risk, given input that has been received by both parties in separate mock

10  trials.

11      **B.      The Cases are Complex and Uncertain, and This Settlement is Proper in
              Light of the Uncertainties.**

12

13         The course of this Litigation has been complex, and it is likely to so continue.  It has been

14  a case of first impression in the Seventh Circuit, and will otherwise be challenged at appellate

15  levels by Defendant.  Other factors, including issues of classification in light of concurrent

16  duties, contribute to the complexity of factual and legal resolutions.  Further, there have been

17  inconsistent rulings as to the propriety of the exemption with regard to the issue of subordinate

18  supervision.  Plaintiffs believe in the validity of the *Perez* ruling with the same fervor as

19  RadioShack believes in the opposite ruling in the *Goldman* case.  Hence, the outcome of the

20  *Goldman* appeal in the Third Circuit may provide further momentum for RadioShack to appeal

21  the *Perez* ruling to the Seventh Circuit.

22         In addition, RadioShack has indicated that it may move for decertification of the

23  *Goldman* class if certain of the appellate issues are ruled upon in favor of the Class.  RadioShack

24  may find support for such a motion in a recent ruling from the Middle District of Pennsylvania,

25  holding that workers cannot seek relief for unpaid overtime wages in an action that includes both

26  an "opt-in" collective action class and an "opt-out" class action class.  *See Otto v. Pocono Health*

27  *Sys.,* No. 4:06-CV-1186, 2006 WL 3059924 (M.D. Pa. Oct. 27, 2006).  Both such classes were

28

- 16 -

JOINT MOTION FOR AN ORDER GRANTING
PRELIMINARY APPROVAL OF SETTLEMENT

used in *Goldman*. While the *Otto* decision is not binding, and Plaintiff has strong arguments and precedent from other cases in opposition to such a ruling, there are no guarantees that the *Goldman* Court would allow both classes to continue to pursue their claims in this action.

The breadth of litigation, complexity of legal issues, and uncertainty of outcomes counsel for settlement instead of prolonged litigation. And the settlement amount, now and as proposed, is fair and reasonable in light of the aforementioned complexities and uncertainties.

**C.      The Litigation has Drawn on for More Than Four Years at Great Expense to All Parties.**

More than four years ago, the *Perez* and *Goldman* cases were filed. Together, these plaintiffs constitute more than 80% of the Settlement Class. During the course of that time, tens of thousands of pages of discovery and e-discovery have been exchanged, and more than 100 depositions were taken of the named plaintiffs, "Y" store managers, district and regional managers, sales associates, and officers, employees and agents for Defendant. Class certification motions have been drafted, opposed, replied to and granted. Summary adjudication was sought and granted in part in *Perez*; and sought and denied in *Goldman*. Extensive formal written discovery was conducted by all parties, and both sides have conducted collateral investigations of facts. Experts were retained at great expense – including such experts as business consultants and forensic accountants. Mock trials were conducted. The *Goldman* parties went to trial in Philadelphia. The *Perez* parties prepared and reported ready for the first day of anticipated trial in Chicago. The magnitude of the plaintiffs' costs, alone, has reached almost $1.3 million, notwithstanding attorneys' fees. No doubt, RadioShack's costs are similar.

Without this settlement, additional significant costs would be incurred in *Perez* and *Lloredo* to prepare and take the cases to trial and possibly through appellate review, and in *Goldman* to complete the appeal already in progress, and to possibly re-try the case and go through the appellate process a second time. Additional years may pass while class members wait for final resolution of their claims.

- 17 -

1    The proposed Settlement would bring closure to these escalating costs, which are not likely
2    to add to the significant recovery that is currently available under the Agreement, and which
3    would simply serve to diminish funds available to the settling class members.  It is in the best
4    interest of the Settlement Class to bring to closure to the escalating costs of this Litigation.

5    **D.**      **The Parties are Aware of No Opposition to the Settlement.**

6    This Settlement is a result of skilled mediation and many sessions of negotiation,
7    continuing up to the moment of the first day of trial in the *Perez* case and beyond, to the week
8    before this motion was filed.  Magistrate Judge Nan R. Nolan, Northern District of Illinois,
9    assisted the parties in reaching this Settlement.  The class has not yet been formally notified of
10   the proposed Settlement terms, but many class members have called for status updates and have
11   been advised of the terms, and have voiced their support.  While a relatively small number of
12   class members have expressed disappointment with the $100 payments, they have been advised,
13   and will be again advised in the Settlement Notice, of their right to submit objections.  The
14   parties will address any objections that are submitted in their motion for final approval.

15   **E.**      **Competent Counsel Believe that the Settlement is Fair and Reasonable in**
16            **Light of the Well-Developed Facts and Legal Issues.**

17   The proposed Settlement is the product of extensive discovery, competitive litigation and
18   lengthy negotiations.  This is not the situation of a hasty settlement.  The parties to the Litigation
19   are represented by experienced and able counsel who have litigated these matters aggressively
20   during the past several years.  Having taken the matter to trial once in *Goldman*, and having
21   prepared for the *Perez* trial, counsel are fully informed of the facts necessary to reach, and have
22   reached, supportable opinions that the proposed Settlement is fair and reasonable and in the best
23   interest of the members of the Settlement Class.  Further, the Settlement has been assisted by
24   Magistrate Judge Nan R. Nolan.  Hence, competent counsel and an experienced judge agree that
25   the Settlement should be approved.

26   **F.**      **The Settlement Amount is Fair, Reasonable and Adequate in Light of the**
              **Risks to the Parties if Litigation Continues.**

27

28                                    - 18 -

1   As stated above, all parties share uncertainty in this Litigation.  The persons in the 80/80
2   Subgroup have the least risk, because the *Perez* court has already ruled that they are non-exempt.
3   However, the *Goldman* court did not so rule.  Appellate issues remain on both sides.  The
4   Primary Duty Subgroup has the greatest risk, because a jury has already found in favor of
5   RadioShack on this issue in *Goldman,* a Wisconsin court similarly found a class of Wisconsin
6   "Y" store managers held a primary duty of management, and mock trial results have been less
7   than favorable.  The parties recognize that they risk losing everything if they proceed to trial and
8   if they lose on appeal, and that two-thirds of the *Goldman* class could lose their class status.
9   Possibly, the Litigation could continue for many years – imposing great cost to all involved.
10  Hence, the proposed Settlement considers the risk, apportions it rationally, and seeks to bring
11  closure to this expensive Litigation.

12       The Settlement amount provides 100% of up to six years of stipulated FLSA back
13  overtime wages to class members within the 80/80 Subgroup.  Hence, it not only adequately, but
14  entirely, compensates those persons for their compensatory damages.  The Settlement amount
15  additionally provides a fixed $100 payment to persons who would not benefit by the *Perez*
16  court's ruling on the subordinate supervision issue and who could be similarly situated to the
17  *Goldman* class, which lost at trial.  Since the Primary Duty Subgroup could reasonably expect to
18  receive nothing as a result of a trial, their recovery as the product of this proposed Settlement
19  Agreement is reasonable also.  Hence, no improper preferential treatment is given to any
20  segment of the Settlement Class.

21  **IV.    THE NOTICE PROVIDES PROPER INFORMATION TO MEMBERS OF THE
22          SETTLEMENT CLASS.**

23       The proposed Collective Action Notice, Class Action Notice, and Settlement Notice
24  (attached as Exhibits K, M and N to the proposed Settlement Agreement) use plain, concise and
25  easily understood language.  The Notices provide detailed information regarding the claims
26  asserted in these actions, the history and background of the Litigation, the definition of the

27
28                                      - 19 -

1   Settlement Class, the terms and provisions of the Settlement Agreement, and the settlement

2   approval procedure.

3        The Collective Action Notice provides instructions to the *Perez* Supplemental Notice

4   Class on how to opt in to the action and this Settlement, and the Class Action Notice provides

5   instructions to the *Goldman* Supplemental Notice Class on how to opt out of the action and this

6   Settlement.

7        The Settlement Notice will be sent to all parties to this Litigation, regardless of whether

8   they will receive a payment under the proposed Settlement.  The Settlement Notice will state the

9   location, dates and times for the final fairness hearings, and will inform any objectors to the

10  settlement that they may appear at the final fairness hearing if they have timely filed objections

11  with the relevant court.  While the proposed Settlement would not allow any Settlement Class

12  members (as opposed to Supplemental Notice Class members) to opt out of the settlement, all

13  Settlement Class members have either opted in to certified collective classes (*Perez*, *Goldman*

14  and *Lloredo* opt-ins), or they have joined a pre-existing action (the *Birns* plaintiffs), or, as in the

15  case of the *Goldman* opt-ins and opt-outs, they have lost at trial, and final judgment was entered

16  against them.

17       The parties have also provided for all steps necessary to insure that class members

18  receive the Notices, by providing for individual mailing to each class member at his or her last-

19  known address, after that address is run through the National Change of Address Database, and

20  the re-mailing of the Notice if it is returned and any updated address information is obtained.

21  **V.    THE DATE FOR THE FINAL FAIRNESS HEARING SHOULD BE SET**
    **FOR A DATE NOT LESS THAN 100 DAYS FOLLOWING PROVISION**
22  **OF THE APPLICABLE MATERIALS TO THE CLAIMS**
    **ADMINISTRATOR.**
23

24       It is anticipated that final fairness hearings will occur in each of the District Courts that

25  have certified classes: the Northern District of Illinois (*Perez*), the Eastern District of

26  Pennsylvania (*Goldman*), and the Southern District of Florida (*Lloredo*).

27

28                                          - 20 -

1   The parties request that the Final Fairness Hearing be set for a date not less than 100 days

2   following provision of the applicable materials to the Claims Administrator, so that all steps that

3   must be accomplished after preliminary approval is granted but before the hearing (e.g., address

4   correction, mailing of notices and payment information, period to object to payment amounts or

5   opt in to *Perez* or opt out of *Goldman*, re-sending any returned notices, submission of any

6   objections) may be completed.  The parties request the opportunity to inform this Court of the

7   progress of other courts in granting preliminary approval and of the parties in finalizing and

8   providing the applicable materials to the Claims Administrator, so the final hearings can be

9   coordinated on dates that allow class members sufficient time to review and comment on the

10  proposed settlement.

11  **VI.   CONCLUSION**

12  Based on the foregoing, the parties respectfully request that the Court issue an Order:

13      1.   Granting preliminary approval of the Settlement;

14      2.   Approving the Notice Plan; and

15      3.   Scheduling the Final Fairness Hearing to take place no less than 100 days

16         following provision of the applicable materials to the Claims Administrator.

17                 Respectfully submitted,

18  DATED:  _____03/06/07_____        **HERMAN & MERMELSTEIN, P.A.**

19

20                 By:  _____/s/ Jeffrey M. Herman_____

21                        Attorneys for Plaintiffs

22  DATED:  _____03/06/07_____        **MCKENNA LONG & ALDRIDGE LLP**

23

24                 By:  _____/s/ Robert S. Brewer, Jr._____

25                        Attorneys for Defendant

26

27

28

JOINT MOTION FOR AN ORDER GRANTING
PRELIMINARY APPROVAL OF SETTLEMENT

<u>CERTIFICATE OF SERVICE</u>

I certify that on this date, true and correct copies of the foregoing Joint Motion and

Proposed Order were served on the following counsel by first-class mail, postage prepaid:

       Robert Thompson, Esquire
       Callahan, McCune & Willis, LLP
       111 Fashion Lane
       Tustin, CA 92780

       Daniel K. Touhy, Esquire
       Touhy & Touhy
       161 North Clark Street, Suite 2210
       Chicago, Illinois 60601

       Robert S. Brewer, Jr., Esquire
       James S. McNeill, Esquire
       McKenna Long & Aldridge, LLP
       Symphony Towers, Suite 3300
       750 B Street
       San Diego, CA 92101

By: _____/s/ Jeffrey M. Herman_____
       Jeffrey M. Herman

Dated:  March 6, 2007